# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JEREMY BEEBE,

          Plaintiff,

    v.

JERROD ANDREWS[1] and
CHASTITY WILSON,

          Defendants.

Case No. 1:21-cv-00012-SLG

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT AND OTHER PENDING MOTIONS

Plaintiff Jeremy Beebe filed a pro se complaint raising a number of claims against Defendants Sergeant Jerrod Andrews and Chastity Wilson, who are employees of the State of Alaska Department of Corrections ("DOC"). At all relevant times leading to the filing of the complaint, Mr. Beebe was a pretrial detainee in state custody at the Lemon Creek Correctional Center ("Lemon Creek") in Juneau, Alaska.[2] This order addresses each of the five motions pending before

---

[1] Mr. Beebe's complaint spells Sgt. Andrews' first name as "Gerad," but Sgt. Andrews' filings indicate that the correct spelling is "Jerrod." *E.g.*, Docket 10; Docket 60.

[2] Docket 10 at 4 ¶ 4 (Compl.); *see also* Minute Entry, *United States v. Beebe*, No. 1:19-CR-00002-001-TMB (D. Alaska Mar. 8, 2019), ECF No. 9 (noting court-ordered detention); Judgment, *United States v. Beebe*, No. 1:19-CR-00002-001-TMB (D. Alaska Apr. 29, 2021), ECF No. 140 (noting sentence received); Docket 72 at 9 (Pl.'s Opp'n Defs.' Mot. Summ. J.) ("The court should remember that at the time of the assault Beebe was a pre-trial state inmate . . .."). Mr. Beebe originally filed his complaint in the Alaska Superior Court, but Defendants removed the action to federal court. Docket 1 (Notice of Removal). Because Mr. Beebe's complaint was lodged in this Court through Defendants' Notice of Lodging State Court Record at Docket 10, pinpoint citations to Mr. Beebe's complaint are to the relevant page numbers in the file containing the complaint, not to the pages marked in Mr. Beebe's complaint.

the Court. The primary motions are Defendants' motion for summary judgment at Docket 60 and Mr. Beebe's motion for partial summary judgment at Docket 66.[3] Mr. Beebe opposed Defendants' motion for summary judgment at Docket 72, to which Defendants responded with a motion to strike the opposition at Docket 73. Mr. Beebe responded to Defendants' motion to strike at Docket 79, and Defendants filed a reply at Docket 80. Mr. Beebe also filed at Docket 74 a motion to strike statements included in the memorandum accompanying Defendants' motion for summary judgment at Docket 61.[4] Defendants opposed Mr. Beebe's motion for partial summary judgment at Docket 69, to which Mr. Beebe did not reply. Defendants also opposed Mr. Beebe's motion to strike at Docket 78, to which Mr. Beebe did not reply. Additionally, Mr. Beebe filed a motion seeking to participate in trial via videoconferencing at Docket 64, to which Defendants did not

---

[3] Mr. Beebe's motion for partial summary judgment appears to seek summary judgment as to liability on all claims, but not as to the amount of damages.

[4] In their memorandum, Defendants cite an incident report drafted by Sgt. Andrews that recounts a statement Lemon Creek inmate Matthew Williams provided Sgt. Andrews when Sgt. Andrews questioned Mr. Williams after Mr. Beebe was assaulted on October 2, 2019. Docket 61 at 2. According to the incident report, Mr. Williams told Sgt. Andrews that Mr. Beebe referred to him as "Mr. Stronghand of the special [sic] Olympics," which prompted Mr. Williams to punch Mr. Beebe. Docket 75 at 1 (Mem. of Law in Supp. of Mot. to Strike); Docket 61-2 at 1. Mr. Beebe seeks to strike this statement as well as the following sentence in Defendants' memorandum: "According to the other inmate, Mr. Beebe's approach caused him concern and he felt like Mr. Beebe was preparing to do something bad, and he needed to defend himself." Docket 75 at 2; Docket 61 at 2. Additionally, Mr. Beebe seeks to strike, or perhaps clarify, a statement in Defendants' memorandum noting that a DOC correctional officer gave Mr. Beebe permission to clean himself up after the assault. Docket 75 at 2; Docket 61 at 3. Mr. Beebe maintains that it was Sgt. Andrews, not a different DOC official or corrections officer, who ordered, rather than granted permission to, Mr. Beebe to clean himself up. Docket 75 at 2.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 2 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 2 of 43

respond. All of these motions are now ripe for decision. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

Mr. Beebe originally filed his complaint in Alaska Superior Court, but Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1446.[5] Mr. Beebe alleges violations of his constitutional rights arising under the Eighth and Fourteenth Amendments to the U.S. Constitution as well as violations of DOC policies and procedures and Alaska tort and criminal law.[6] Mr. Beebe's claims concern the events following his alleged assault by Mr. Williams.[7] Mr. Beebe alleges that, on October 2, 2019, he made a benign statement to Mr. Williams, who "sucker-punched [Mr. Beebe] in the face, splitting his lip deeply and injuring his jaw."[8] Mr. Beebe contends that Mr. Williams' punch was unprovoked, unanswered, and witnessed by Lemon Creek officers, including Sgt. Andrews.[9] Mr. Beebe alleges that he requested that Sgt. Andrews contact medical staff to provide him with medical attention and document the assault by taking photographs.[10] But instead of calling medical personnel, Mr. Beebe alleges that

---

[5] Docket 1 at 1.

[6] Docket 10 at 7-10 ¶¶ 33-53.

[7] Docket 10 at 5 ¶ 11.

[8] Docket 10 at 5 ¶ 9-11.

[9] Docket 10 at 5 ¶¶ 10-16.

[10] Docket 10 at 6 ¶¶ 21-23.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 3 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 3 of 43

Sgt. Andrews placed him in an administrative segregation unit.[11]  In the following weeks, Mr. Beebe filed several requests seeking medical attention from Lemon Creek staff.[12]  Mr. Beebe claims that Ms. Wilson failed to respond to one of the RFIs and inadequately responded to the other two by indicating that Mr. Beebe "will be seen by medical" and not providing him with immediate medical attention.[13] In sum, Mr. Beebe asserts that Defendants failed to adequately address his injuries and treated him differently from other assaulted prisoners.[14]

Based on these allegations, Mr. Beebe brings this action against Sgt. Andrews and Ms. Wilson.  Although Mr. Beebe's complaint appears to be rooted in a claim that Defendants were "deliberately indifferent" to his medical needs following the assault, he appears to advance several different legal theories, which the Court has strived to construe liberally, and each of which is discussed herein.[15]

---

[11] Docket 10 at 6 ¶¶ 24-25.

[12] Docket 10 at 7 ¶¶ 29-31. Mr. Beebe's requests for medical care or attention took the form of submissions to DOC of "Requests for Medical Care" or "Requests for Interview," all of which the Court refers to as "RFIs."  *See* Docket 66-6 (December 12, 2019 Request for Medical Care); Docket 66-7 (October 3, 2019 Request for Interview); Docket 66-8 (October 8, 2019 Request for Medical Care); Docket 66-9 (October 8, 2019 Request for Medical Care); Docket 66-10 (October 5, 2019 Request for Medical Care); Docket 66-11 (October 4, 2019 Request for Interview); Docket 66-14 (November 30, 2019 Request for Medical Care); Docket 66-16 (November 3, 2019 Request for Medical Care); Docket 66-23 (October 4, 2019 Request for Interview).  Some of these docket items appear to be scanned or duplicate versions of one another that indicate responses or acknowledgements from DOC personnel.

[13] Docket 10 at 7 ¶¶ 29-31.

[14] Docket 10 at 7 ¶ 32.

[15] *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur obligation remains [after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)], where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." (citation and internal quotation marks omitted)); *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 4 of 43

Mr. Beebe seeks $25,000 in compensatory damages and $75,000 in combined exemplary and punitive damages.[16]

In response, Defendants move for summary judgment, contending that there is no genuine dispute of any material fact and that all of Mr. Beebe's claims must fail.[17] In their accompanying memorandum, Defendants focus their arguments on Mr. Beebe's allegations of constitutional and DOC policy violations rather than the claims that sound in tort or criminal law.[18] Defendants' statement of facts also differs in a few respects from and expands upon the recitation of facts in Mr. Beebe's complaint.[19] For instance, Defendants assert that Mr. Beebe taunted the inmate who assaulted him prior to the assault, displayed "no observable injury to [his] face or blood on his clothing," and was disciplined for refusing to obey Sgt.

---

Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates. This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." (citations omitted)).

[16] Docket 10 at 10 ¶¶ 55, 57-59. Mr. Beebe also appears to seek a decision from the Alaska Attorney General to refrain from representing Defendants in this case. *See* Docket 10 at 10 ¶ 56 ("Plaintiff seeks, due to the defendants' gross and wanton misconduct, deliberate indifference, purposeful disregard for their duty of care, and gross negligence that the State Attorney General should refuse to represent them in this matter."). The Court interprets this as a request for relief from an entity other than this Court and, as such, does not consider the request in this order. The complaint also requests a "declaratory judgment," but it is unspecified what declaration from the Court it is seeking, and as such the Court does not further address that request for relief in this order. Docket 10 at 10 ¶ 55.

[17] Docket 60 at 1; Docket 61 at 1-2.

[18] *See generally* Docket 61.

[19] Docket 61 at 2-6.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 5 of 43

Andrews' directive to change his clothes prior to his placement in an administrative segregation unit.[20]

Defendants include as supporting evidence security camera video footage of the alleged assault on Mr. Beebe and his subsequent interactions with DOC personnel, security camera photographs of Mr. Beebe's face following the alleged assault, handwritten and typed documents produced in response to the incident (e.g., information and disciplinary reports, an administrative segregation admission form, a summary of Mr. Beebe's medical file, and a summary of the video footage and conversations recorded therein), DOC policies and procedures, written discovery responses, and Ms. Wilson's travel itinerary.[21]

In his competing motion for partial summary judgment and opposition to Defendants' motion, Mr. Beebe has submitted documents generated by Defendants and their counsel in the course of this litigation, documents related to Mr. Beebe's citation for refusing to obey Sgt. Andrews' directive and appeal thereof, administrative segregation logs, Mr. Beebe's RFI submissions and responses from DOC personnel, a newspaper article detailing an unrelated incident in which a person died following a punch to the face, and an affidavit from Mr. Beebe reiterating and setting forth factual allegations.[22]

---

[20] Docket 61 at 2-5.

[21] *See* Docket 61-1 (Table of Contents to Defs.' Exs.).

[22] *See* Docket 66-1 (Table of Contents to Appendices to Pl.'s Mot. for Partial Summ. J.); Docket 67 (Pl.'s Aff. in Supp. of Mot. for Partial Summ. J.); Docket 66-25 (newspaper article); Docket

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 6 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 6 of 43

# LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case."[23] If the movant meets this burden, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'"[24] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[25] When parties file cross-motions for summary judgment, "[e]ach motion must be considered on its own merits."[26] This requires a court to review the evidence submitted by both parties in support of their motions for summary judgment before ruling on either motion.[27]

---

72-2 (segregation logs).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[24] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[25] *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

[26] *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (alteration in original) (citations and internal quotation marks omitted).

[27] *Id.*

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 7 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 7 of 43

When evaluating the record to decide a motion for summary judgment, a court must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[28]   However, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[29]   Specifically, when a party files a videotape with the Court, the veracity and relevance of which is not questioned by any party, a court should view the facts in the light depicted by the videotape.[30] Further, the Ninth Circuit Court of Appeals has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."[31]

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Mr. Beebe brings claims arising under the federal Constitution.  The Court has supplemental jurisdiction over Mr. Beebe's apparent

---

[28] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted).

[29] *Id*. at 380.

[30] *See id*. at 380-81 ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

[31] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)) (citing *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir.1989)); *see also Oakley, Inc. v. McWilliams*, 584 F. App'x 528, 529 (9th Cir. 2014) ("[A party's] self-serving and uncorroborated declarations . . . are insufficient to avert summary judgment . . . ." (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 8 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 8 of 43

state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are "so related" to his federal claims that they "form part of the same case or controversy under Article III of the United States Constitution."

## DISCUSSION

Mr. Beebe brings four categories of claims: (1) claims of violations of his constitutional rights, which are cognizable pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) claims purportedly arising under DOC policies and procedures; (3) apparent state law tort claims; and (4) an apparent criminal claim.[32]

As an initial matter, Mr. Beebe brings his claims against Defendants in their "individual and professional capacities."[33]  To the extent Mr. Beebe seeks damages against Defendants in their official capacities, he is barred from such recovery by the Eleventh Amendment.[34]  Accordingly, the Court dismisses Mr. Beebe's official capacity claims with prejudice.  The Eleventh Amendment does not bar suits for prospective injunctive relief against state officials acting in their official capacities, but, as Defendants point out, Mr. Beebe does not seek such relief.[35]  But the

---

[32] Docket 10 at 7-10 ¶¶ 33-53.

[33] Docket 10 at 4 ¶¶ 6-7.  In his complaint, Mr. Beebe named the State of Alaska, DOC, as a defendant, but the Court dismissed DOC on August 23, 2021 because Mr. Beebe did not allege any facts supporting a claim for relief against it.  Docket 10 at 4 ¶ 5; Docket 16 (Order Regarding State's Mot. to Dismiss).

[34] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that suit against a state official in official capacity is a "suit against the official's office" and hence "no different from a suit against the State itself" (citations omitted)).

[35] Docket 61 at 11; *Pittman v. Or., Emp. Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123, 156-57 (1908)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 9 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 9 of 43

Eleventh Amendment does not bar suits for damages against state officials sued in their individual capacities. Therefore, the Court will consider Mr. Beebe's claims for monetary damages against Defendants in their individual capacities.[36]

One other threshold matter is whether the Court should consider Mr. Beebe's opposition to Defendants' motion for summary judgment.[37] Defendants moved to strike Mr. Beebe's response, suggesting that Mr. Beebe "did not personally sign or file his [o]pposition."[38] The Court previously denied a motion from Mr. Beebe to allow his sister to file documents with the Court on his behalf in this case.[39] Defendants contend that Mr. Beebe violated this order because his opposition to their summary judgment motion was postmarked in Wrangell, Alaska, while he was incarcerated in Sheridan, Oregon.[40] Alternatively, if the Court will consider Mr. Beebe's opposition, Defendants seek leave to reply to the opposition.[41]

---

[36] *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *see, e.g.*, *Daniels v. Harris*, No. 09-5542RJB/JRC, 2011 WL 1561955, at *1 (W.D. Wash. Apr. 25, 2011) (considering claims against state officials in their individual capacities).

[37] Docket 72.

[38] Docket 73 at 1-2 (Defs.' Mot. to Strike Pl.'s Opp'n to Defs.' Mot. for Summ. J.).

[39] Docket 54 (Order Regarding Mot. to Allow Kathy Blackburn to File into Case); Docket 47 (Mot. to Allow Kathy Blackburn to File Any/All Paperwork in Case).

[40] Docket 73 at 3.

[41] Docket 73 at 3.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 10 of 43

Case 1:21-cv-00012-SLG    Document 85    Filed 03/01/23    Page 10 of 43

It appears that Mr. Beebe may have violated the Court's order by filing his opposition through his sister or another third party.[42]  Although the Court does not excuse or condone this violation, the Court has nonetheless considered the arguments raised in the opposition because the Court is entering summary judgment in favor of Defendants for the reasons discussed herein.[43]  Defendants' motion to strike at Docket 73 is therefore denied.

## I.    Section 1983 Claims

Section 1983 is the legal vehicle entitling "an injured person to money damages if a state official violates his or her constitutional rights."[44]  To recover under Section 1983, a plaintiff must establish that (1) a defendant acted under color of state law and (2) deprived the plaintiff of rights secured by the federal Constitution or federal statutes.[45]  To act under color of state law, a defendant must act with state authority as a state actor.[46]  For a plaintiff to be deprived of a right, a defendant's action needs to either violate rights guaranteed by the U.S.

---

[42] *See* Docket 73-1 at 1-2 (Defs.' Mot. to Strike Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. A) (envelopes postmarked in Alaska with Oregon return address).

[43] *Cf. Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir.1986) ("We recognize that the plaintiff represented himself and therefore, in evaluating his compliance with the technical rules of civil procedure, we treat him with great leniency." (citations omitted)).

[44] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

[45] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citations omitted).

[46] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 11 of 43

Case 1:21-cv-00012-SLG    Document 85    Filed 03/01/23    Page 11 of 43

Constitution or an enforceable right created by federal law.[47]  Section 1983 does not confer federal constitutional or federal statutory rights.[48]  Instead, it provides a mechanism for remedying violations of pre-existing federal rights.[49]  As such, the Court evaluates Mr. Beebe's Section 1983 claims by applying the specific standard applicable to each constitutional right.

## A. Alleged Violations of the Eighth Amendment

Mr. Beebe alleges that Defendants violated his Eighth Amendment right to be free from "cruel and unusual punishment."  Mr. Beebe alleges that Sgt. Andrews violated this right by failing to provide medical attention to him following the assault, while Ms. Wilson allegedly failed "to inquire into the complained of injuries" identified in Mr. Beebe's RFI submissions.[50]

It is well established that deliberate indifference to a convicted prisoner's serious medical need constitutes an Eighth Amendment violation.[51]  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

---

[47] *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997); *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).

[48] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted).

[49] *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).  Section 1983 is also not a mechanism for remedying alleged violations of state law.  *Id.* (citation omitted).

[50] Docket 10 at 7-9 ¶¶ 35, 38, 46, 48.

[51] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (citation omitted).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 12 of 43

medical care . . . ."[52]  However, at the time of the events giving rise to his claims, Mr. Beebe was a pretrial detainee.[53]  As a pretrial detainee, Mr. Beebe was not subject to punishment, and therefore he cannot bring claims to redress rights secured by the Eighth Amendment; instead, Mr. Beebe has a Fourteenth Amendment due process right to be free from conditions of confinement that amount to punishment.[54]  Accordingly, Defendants are entitled to summary judgment on Mr. Beebe's Eighth Amendment claims.

## B. Alleged Violations of Fourteenth Amendment Rights

Mr. Beebe alleges that Defendants violated his Fourteenth Amendment due process and equal protection rights.[55]  Mr. Beebe alleges that Defendants were deliberately indifferent to him when they failed to provide him with medical attention in the immediate aftermath of the assault (in the case of Sgt. Andrews) and in the days and weeks following the assault and in response to his RFIs (in the case of Ms. Wilson).[56]

---

[52] *Estelle*, 429 U.S. at 104 (footnotes omitted).

[53] *See* Minute Entry, *United States v. Beebe*, No. 1:19-CR-00002-001-TMB (D. Alaska Mar. 8, 2019), ECF No. 9 (noting court-ordered detention); Judgment, *United States v. Beebe*, No. 1:19-CR-00002-001-TMB (D. Alaska Apr. 29, 2021), ECF No. 140 (noting sentence received); Docket 72 at 9 ("The court should remember that at the time of the assault Beebe was a pre-trial state inmate . . . .").

[54] *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees.  Due process requires that a pretrial detainee not be punished.").

[55] Docket 10 at 7-9 ¶¶ 37, 40, 47, 50.

[56] Docket 10 at 7, 9 ¶¶ 35, 46.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 13 of 43

### i.    Due Process Claims

Seriously injured pretrial detainees have a constitutional right to receive adequate medical treatment.[57]  Claims by pretrial detainees for violations of this right to adequate medical care are evaluated under an "objective deliberate indifference standard."[58]  "The denial of medical care in the face of an obvious emergency constitutes deliberate indifference."[59]  Under this standard, articulated in *Gordon v. County of Orange*, a pretrial detainee alleging a failure to provide constitutionally adequate medical care must establish each of the following four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.[60]

---

[57] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) ("The Court has recognized that deliberate indifference is egregious enough to state a substantive due process claim in one context, that of deliberate indifference to the medical needs of pretrial detainees . . . ." (citations omitted)).

[58] *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).

[59] *Lopez v. Swaney*, 741 F. App'x. 486, 487 (9th Cir. 2018) (citations omitted); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (holding that deliberate indifference could reasonably be found where a delay in treating a prisoner's dental condition was deliberate and resulted in the prisoner's suffering "unnecessary and wanton infliction of pain" (citations omitted)).

[60] *Gordon*, 888 F.3d at 1125.  This test aligns with the test for determining deliberate indifference under the Eighth Amendment, except as to the third element.  The Eighth Amendment requires a convicted prisoner to prove that the state official "*subjectively* ha[d] a sufficiently culpable state of mind."  *Id.* at 1125 n.4 (citation and internal quotation marks omitted).  With respect to the other elements, courts may look to caselaw evaluating both the Eighth and Fourteenth

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 14 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 14 of 43

"Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."[61]  However, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983."[62]  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the "facts and circumstances of each particular case."'"[63]  A "'mere lack of due care by a state official' does not '"deprive" an individual of life, liberty, or property under the Fourteenth Amendment.'"[64]  Thus, a pretrial detainee must "prove more than negligence but less than subjective intent—something akin to reckless disregard."[65]  The fourth element requires a plaintiff to show that his injuries were actually and proximately caused by the defendant.[66]

---

Amendment rights to be free from deliberate indifference in the face of a medical need.  *See Ervin v. Drennan*, No. 2:19-cv-01883-KJM-CKD PS, 2020 WL 7769832, at *5 (E.D. Cal. Dec. 30, 2020) ("But apart from the removal of this subjective element, the [Eighth and Fourteenth Amendment] tests otherwise continue to align."), *report and recommendation adopted*, No. 2:19-cv-01883-KJM-CKD PS, 2021 WL 4442873 (E.D. Cal. Sept. 28, 2021).

[61] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation and internal quotation marks omitted).

[62] *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted).

[63] *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

[64] *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

[65] *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071) (footnote omitted).

[66] *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 15 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 15 of 43

Viewing the facts in the light most favorable to Mr. Beebe for the purposes of evaluating Defendants' motion, a reasonable jury could find that the first element has been met, as Sgt. Andrews and Ms. Wilson each made intentional decisions as to the conditions of Mr. Beebe's confinement.[67]  Immediately after the assault, Sgt. Andrews did not summon medical personnel and placed Mr. Beebe in the booking holding cell.[68]  He then decided to place Mr. Beebe in an administrative segregation unit.[69]  As for Ms. Wilson, she made at least some decisions in relation to Mr. Beebe's access to medical care when she responded to his RFIs.[70]

However, there is no indication that the remaining *Gordon* elements are met, even when the disputed facts are viewed in the light most favorable to Mr. Beebe. The crux of Mr. Beebe's due process claim is that the "violent" punch Mr. Beebe received from Mr. Williams "split[] his lip deeply[,] . . . injur[ed] his jaw[,] . . . [and] caus[ed] injuries to [his] hip, knee and lower back."[71]  Shortly after the punch, Mr. Beebe allegedly visited the "strip-out" bathroom, where he "verified his facial

---

acts or omissions are alleged to have caused a constitutional deprivation." (citation omitted)).

[67] *Gordon*, 888 F.3d at 1125.

[68] *See* Docket 6 at 3 ¶¶ 16, 18 (admitting that Sgt. Andrews "assisted in escorting plaintiff to the Booking area" and that Mr. Beebe "was secured in the booking holding cell").

[69] *See* Docket 61-7 (administrative segregation admission form).

[70] *See* Docket 7 at 3-4 ¶¶ 29-30 (admitting that Ms. Wilson received and responded to Mr. Beebe's RFIs).

[71] Docket 10 at 5 ¶¶ 11-12.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 16 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 16 of 43

injuries" and "washed the blood off his face."[72]   Mr. Beebe contends that he "showed signs of injury" in the immediate aftermath of the assault and on subsequent days, such as when he reported on October 4, 2019 his concern about potential memory loss.[73]  Mr. Beebe points to photographic evidence of "blood from the evident split lip . . . visible on his face and on his clothing."[74]   Mr. Beebe also alleges that he informed Sgt. Andrews that "he needed medical to see him, then asked that his injuries be photographed."[75]   Given the potentially unobservable risks of head trauma, Mr. Beebe maintains that Sgt. Andrews was not in a "position to make th[e] call" that Mr. Beebe's injuries did not warrant immediate medical attention and so was deliberately indifferent to his need for immediate medical evaluation.[76]

As for Ms. Wilson, Mr. Beebe acknowledges that she was not present when the assault took place but claims that she had the "authority to make medication decisions" and refused to provide medical attention to Mr. Beebe for his injuries

---

[72] Docket 72 at 2.

[73] Docket 72 at 3; *see also* Docket 66-11 (October 4, 2019 RFI in which Mr. Beebe states, "As I was utilizing my recreation time on the phone I had used my pin # to call a friend and then tried to call another friend and all of a sudden I cannot remember my pin #, is this due to the sudden impact that was done to my head?  Is this normal?  My memory seems to be failing! . . . Do I need to have a head scan?  This is [sic] serious situation!").

[74] Docket 72 at 4; Docket 61-6 (Mem. Supp. Mot. Summ. J. Ex. E).  Although the photograph to which Mr. Beebe refers is blurry, it appears to show a mark on the clothing over the left side of his chest.  Docket 61-6.

[75] Docket 72 at 2.

[76] Docket 72 at 4, 8-9.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 17 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 17 of 43

"until approximately 15 days later."[77] He claims Ms. Wilson exercised her "sound judgment to delay any related medical intervention."[78]

In the absence of the videotapes filed with the Court, a reasonable jury might have found that Sgt. Andrews acted with deliberate indifference in failing to immediately obtain a medical assessment on whether Mr. Beebe had been seriously injured as a result of the assault. However, the DOC video footage provided by Defendants, the veracity and relevance of which Mr. Beebe does not dispute, demonstrates that no reasonable jury could so conclude. That videotape shows that Mr. Beebe was punched in the face with considerable force at 7:03 pm on October 2, 2019.[79] The punch knocked Mr. Beebe to the ground.[80] When he stood up, Mr. Beebe wiped his face multiple times.[81] As he walked into the "strip-out" room to change his clothes per Sgt. Andrews' order, Mr. Beebe appears to have a small red mark on his shirt, which the Court construes in the light favorable to Mr. Beebe as a blood stain stemming from the assault.[82] He can be seen wiping

---

[77] Docket 72 at 5.

[78] Docket 72 at 6.

[79] Docket 61-3 (Mem. Supp. Mot. Summ. J. Ex. B: DOC Security Video 1, Gates 4 & 5).

[80] Docket 61-3.

[81] Docket 61-3.

[82] Docket 61-3 (timestamp 2:23). The apparent blood stain also appears to be visible in a screen capture Defendants provide of Mr. Beebe from 7:05 pm. Docket 61-6. Although it is possible that the mark is a not a blood stain, it does not appear that the other inmates in the video footage have a similar mark on their shirts or that the mark was part of the fabric of Mr. Beebe's shirt. Docket 61-3.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 18 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 18 of 43

his face again as he walks out of the "strip-out" room at 7:08 pm.[83]  Although the video footage is not of ideal clarity, there is no obvious blood on Mr. Beebe's face at these or any other points in more-than-90 minutes of video footage taken immediately following the incident.[84]  Even assuming there was some blood on Mr. Beebe's face as he asserts, the video and photographic evidence reveal no active bleeding, staining, or bruising on his lip or on any other part of his face.[85]  Mr. Beebe appears to walk and interact with the DOC officers without any sign of injury, let alone a serious injury.[86]  He does not stagger, limp, hesitate, or show outward signs of confusion or pain.[87]  At one point, Mr. Beebe reenacts the fall he suffered following Mr. Williams' punch by dropping to the floor and promptly standing back up without any hesitation.[88]  At another point, a passing inmate asks Mr. Beebe, "Hey, you good?," to which Mr. Beebe responds, "Yeah, I'm good."[89]

---

[83] Docket 61-4 (Mem. Supp. Mot. Summ. J. Ex. C: DOC Security Video 2, Booking Area & Hallways to Segregation).

[84] Docket 61-3; Docket 61-4.

[85] Docket 61-3; Docket 61-4.  As noted, the video footage is not entirely clear, but neither it nor the two screen captures Defendants have provided—one taken from the video footage at 7:05 pm and the other taken from the video footage at 8:39 pm—show any obvious bleeding, blood stains, or bruising, let alone any other indicia of a physical injury to Mr. Beebe's face.  Docket 61-6; Docket 61-8 (Mem. Supp. Mot. Summ. J. Ex. G).

[86] Docket 61-3 (timestamp 1:37-2:24); Docket 61-4 (timestamp 0:00-2:14; 8:53-9:17; 1:09:53-1:20:45; 1:24:57-1:31:19).

[87] Docket 61-3 (timestamp 1:37-2:24); Docket 61-4 (timestamp 0:00-2:14; 8:53-9:17; 1:09:53-1:20:45; 1:24:57-1:31:19).

[88] Docket 61-4 (timestamp 1:26:47-1:27:00).

[89] Docket 61-4 (timestamp 25:05-25:09).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 19 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 19 of 43

In his filings, Mr. Beebe repeatedly asserts that he requested medical attention from Sgt. Andrews after the assault.[90] But the videotape flatly contradicts these assertions, as the Court did not hear Mr. Beebe request medical attention from Sgt. Andrews or anyone else at any point in the video footage, which captured the assault and the subsequent 90 minutes.[91] The closest Mr. Beebe came to requesting medical attention was at 8:23 pm when he wondered aloud in the presence of a DOC official (who was not Sgt. Andrews) whether he may require a stitch to address a cut that was "pretty deep in" his lip.[92]

The videotape provides no indication that Mr. Beebe was suffering from, or at substantial risk of suffering from, "serious harm" on October 2, 2019 in the immediate aftermath of the assault.[93] Viewed in the light most favorable to Mr. Beebe, Sgt. Andrews may have seen a possible small blood mark on Mr. Beebe's shirt and potentially some bleeding on his lip. Even so, no reasonable jury could find that a reasonable official in Sgt. Andrews' position would have determined that such injuries necessitated immediate medical attention in order to abate a risk of

---

[90] *See, e.g.*, Docket 66 at 4 ¶ 5 ("[E]ven though Beebe requested to be seen and evaluated by medical, [Sgt. Andrews] disregarded, refused and otherwise failed to render [medical care] . . . ."); Docket 72 at 2 ("Beebe responded . . . that he needed medical to see him, then asked that his injuries be photographed.").

[91] Docket 61-3; Docket 61-4. The Court may rely on the videotape to find that Mr. Beebe's contradicted assertions do not create a triable issue of fact. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("The Court of Appeals . . . should have viewed the facts in the light depicted by the videotape.").

[92] Docket 61-4 (timestamp 1:17:27).

[93] *Gordon*, 888 F.3d at 1125.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 20 of 43

serious harm. Mr. Beebe also alleges that Sgt. Andrews should have provided him with immediate medical attention since Mr. Beebe may have suffered from "an internal head trauma event . . . [which] cannot be radily [sic] observed."[94] But Sgt. Andrews observed Mr. Beebe fully conscious, verbal, and mobile in the booking cell for well over one hour. No reasonable officer in his position would have appreciated that there was a high degree of risk of a serious head injury.[95]

Mr. Beebe cites a district court case in which the court found that a factual dispute existed as to the seriousness of an injury suffered by a prisoner with a cut lip that resulted from an altercation with another prisoner.[96] In that case, however, the plaintiff asserted that his lip was "bleeding real bad" and "was badly swollen."[97] A nurse also commented that the prisoner's lip "looked like it needed stitches."[98] The court found that there was no evidence in the record to refute the prisoner's claims, although it also suggested that "a cut lip may not meet the level of

---

[94] Docket 72 at 4.

[95] As support for his contention that any punch to the head warrants immediate medical attention, Mr. Beebe provides a newspaper article describing the death of an intoxicated person who reportedly was punched in the head, fell to the ground, suffered a "violent[]" head strike against the pavement, and was found "not responsive to stimuli." Docket 66-25. Notwithstanding the potential inadmissibility of this newspaper article at trial, there are obvious differences between the result of the punch described in the newspaper and the result of the punch to Mr. Beebe, who stood up shortly after receiving the blow and was both responsive and not intoxicated. Docket 61-3. This article fails to establish that a reasonable official observing Mr. Beebe's condition would have appreciated that a lack of immediate medical attention would have resulted in a high risk of serious harm to Mr. Beebe. *Gordon*, 888 F.3d at 1125.

[96] Docket 72 at 8-9 (citing *Smallwood v. Renfro*, 708 F. Supp. 182, 187 (N.D. Ill. 1989)).

[97] *Smallwood*, 708 F. Supp. at 187.

[98] *Id*.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 21 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 21 of 43

seriousness called for by" the caselaw.[99]  Here, by contrast, the photographic and video evidence refutes Mr. Beebe's contentions and shows that, at worst, Mr. Beebe suffered a minor cut to his lip that was no longer actively bleeding just minutes after he was punched.[100]

Additionally, Mr. Beebe's alleged deprivation of access to medical care is immaterial because it was short-lived.  A summary of Mr. Beebe's medical file reveals that DOC medical staff conducted three rounds in the administrative segregation unit where Mr. Beebe had been placed on the day following the assault, with the first such round taking place at 5:55 am, less than 12 hours after Mr. Beebe was punched.[101]  Mr. Beebe also received medication at 12:54 pm and 6:52 pm that day.[102]  There is no indication from the medical file summary that Mr. Beebe raised any concerns about his alleged injuries to the medical staff regularly attending to him that day or on the following days while he was in administrative segregation.[103]  Mr. Beebe does not dispute any of these facts.  Instead, he focuses much of his briefing on the concerns he raised in the RFIs, a more formal

---

[99] *Id.*

[100] Docket 61-3; Docket 61-4; Docket 61-6; Docket 61-8.

[101] Docket 61-10 at 1 (Mem. Supp. Mot. Summ. J. Ex. I).

[102] Docket 61-10 at 1.

[103] Docket 61-10; *cf. Taggart v. S.F. Sheriff's Dep't*, No. C-13-3439 TEH (PR), 2015 WL 13309945, at *5 (N.D. Cal. Mar. 18, 2015), *aff'd*, 675 F. App'x 734 (9th Cir. 2017) (finding that a deputy was not deliberately indifferent to a prisoner's serious medical needs when the prisoner failed to request a wheelchair accommodation prior to walking).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 22 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 22 of 43

process for requesting medical care that could not reasonably be expected to result in the provision of immediate medical care absent a medical emergency.[104]

Moreover, the fact that Mr. Beebe failed to raise his concerns to the numerous DOC officials and medical personnel with whom he interacted after the assault highlights the immateriality of any delay on the part of Ms. Wilson in responding to his RFIs. And the record shows Ms. Wilson responded to Mr. Beebe's RFIs just one business day after she returned to work from her business conference and arranged for Mr. Beebe's formal medical visit on or around October 14, 2019.[105] That Ms. Wilson did not respond with written comments to Mr. Beebe's October 8, 2019 RFI—even though she responded to his other RFIs by noting he would receive medical attention—does not mean that she was deliberately indifferent to serious medical needs of Mr. Beebe.[106]

---

[104] Docket 66-6; Docket 66-7; Docket 66-8; Docket 66-9; Docket 66-10; Docket 66-11; Docket 66-14; Docket 66-16; Docket 66-23.

[105] Docket 66-10 (containing Ms. Wilson's October 8, 2019 response to Mr. Beebe's October 5, 2019 RFI); Docket 61-15 at 2 (noting Ms. Wilson's scheduled return to Juneau on October 4, 2019). The DOC medical file summary provided by Defendants indicates that Mr. Beebe received nurse visits on October 14, 2019 to address his "hip pain" and "injury." Docket 61-10 at 5, 6. Mr. Beebe alleges that he received medical care in response to his RFIs on or around October 22, 2019. Docket 66 at 6 ¶¶ 6, 8. This factual dispute concerning the date on which Mr. Beebe first received treatment in response to his RFIs is immaterial because Mr. Beebe had access to medical staff multiple times per day beginning on October 3, 2019 and for each subsequent day he remained in administrative segregation. *See generally* Docket 61-10.

[106] *See* Docket 66-10 (containing Ms. Wilson's October 8, 2019 response to Mr. Beebe's October 5, 2019 RFI, stating, "You will be seen in medical"); Docket 66-23 (containing Ms. Wilson's October 8, 2019 response to Mr. Beebe's October 4, 2019 RFI, stating, "I've got you on the list to be seen by MH"); *Berry v. Lee*, 983 F.2d 1075, at *2 (9th Cir. 1992) ("Failure to allow every requested visit to a doctor does not constitute medical indifference where evidence shows that [the prisoner] received medical treatment." (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 23 of 43

As to the fourth element, Mr. Beebe has not demonstrated that there is a triable issue of fact on whether Defendants caused him any injury.[107] Indeed, Mr. Beebe's complaint alleges that his injuries were sustained as a result of the punch from Mr. Williams and contains only conclusory allegations linking Defendants' alleged failure to provide immediate medical attention or prompt responses to the RFIs to any additional harm.[108] Mr. Beebe further alleges in a conclusory fashion that his RFI submissions are evidence of further harm.[109] In the RFIs, Mr. Beebe complained of "severe pain" in his "butt/hip" and jaw, a split lip, light-headedness, fainting, memory loss, and a possible concussion.[110] But Mr. Beebe has not shown how any delay in receiving medical care created or exacerbated his injuries.[111] Even if his RFIs do demonstrate further harm beyond the initial harm Mr. Beebe suffered from the punch, they do not prove that Defendants' failure to provide immediate medical attention to Mr. Beebe within 12 hours of his being assaulted

---

[107] *See Daniels v. Evans*, No. C 08-3780 RMW (PR), 2010 WL 1221798, at *5 (N.D. Cal. Mar. 24, 2010) (finding plaintiff failed to demonstrate that a 6-month delay in receiving knee surgery exacerbated his injuries or caused him further harm).

[108] *See generally* Docket 10 at 4-10.

[109] *See* Docket 72 at 11 ("It is disputed that the excessive delay did indeed cause Beebe further harm of which is evidenced by the numerous RFI's [sic] to medical and mental health provider[s]."); Docket 67 at 2 ¶ 7 (Pl.'s Aff. in Supp. of Mot. for Partial Summ. J.) ("That as a result of the assault I suffered pain, and as a result of denial of an [sic] delay of medical attention I continue to suffer periodically.").

[110] Docket 66-7; Docket 66-8; Docket 66-9; Docket 66-10; Docket 66-11; Docket 66-14; Docket 66-16; Docket 66-23.

[111] *See* Docket 66-7 (October 3, 2019 RFI); Docket 66-8 (October 8, 2019 Request for Medical Care).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 24 of 43

caused or worsened that harm in any way, as the fourth *Gordon* element requires.[112]  Nor does the record contain any evidence that Mr. Beebe's condition worsened prior to his medical appointment two weeks after the incident.[113]  If anything, the record reflects that the cause of any possible exacerbation of Mr. Beebe's injuries was his failure to raise those injuries to Sgt. Andrews, the other DOC officials present in the aftermath of the assault, and the medical staff attending to him each day in the administrative segregation unit.  Indeed, Mr. Beebe acknowledges that he had "personal contact with medical personnel with [sic] a matter of hours" after the assault, although he disputes Sgt. Andrews' motivation for placing him in administrative segregation.[114]

In sum, when viewing the evidence in the light most favorable to Mr. Beebe, no reasonable jury could conclude: (1) Mr. Beebe was "at substantial risk of suffering serious harm" as a result of Defendants' actions or inactions; (2) Defendants failed to "take reasonable available measures to abate" any such

---

[112] *See Gordon*, 888 F.3d at 1125 ("[T]he elements of a pretrial detainee's medical care claim . . . are . . . (iv) by not taking such measures, the defendant caused the plaintiff's injuries.").

[113] *See generally* Docket 61-10 (providing a timeline of the RFIs Mr. Beebe submitted, the medical care he received, and the nature of his ailments from October 2, 2019 through October 21, 2019); *cf. Reed v. Gober*, No. 5:19CV00135-DPM-JTR, 2019 WL 6712090, at *4 (E.D. Ark. Nov. 7, 2019) (finding that a two-week delay in receiving medical attention for alleged heart problems and exposure to mold does not rise to the level of a constitutional violation), *report and recommendation adopted*, No. 5:19-CV-135-DPM, 2019 WL 6716110 (E.D. Ark. Dec. 9, 2019).

[114] Docket 72 at 4 (quoting Defs.' Mot. Summ. J.).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 25 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 25 of 43

substantial risks to Mr. Beebe; or (3) Defendants caused Mr. Beebe's injuries.[115] For these reasons, the second, third, and fourth *Gordon* elements are not met, and Defendants are entitled to summary judgment on Mr. Beebe's Fourteenth Amendment due process claims.

Notwithstanding that there is no triable issue of fact as to three of the four *Gordon* elements, Mr. Beebe contends that he need not demonstrate that he was "completely denied medical care" in order for him to prevail if a defendant acted with an improper motive.[116] As evidence of an improper motive, Mr. Beebe alleges that Sgt. Andrews favored Mr. Williams and held a bias against Mr. Beebe.[117] However, the Fourteenth Amendment deliberate indifference test for pretrial detainees is objective in nature. Therefore, Sgt. Andrews' motivation for placing Mr. Beebe in administrative segregation is immaterial, particularly as Mr. Beebe had access to medical personnel within 12 hours of the assault and regularly thereafter.[118]

---

[115] *Gordon*, 888 F.3d at 1125.

[116] Docket 72 at 8 (first citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); and then citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)). In *Lopez*, the court held that a convicted prisoner "can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment." 203 F.3d at 1132 (citation omitted).

[117] Docket 72 at 7-8, 11.

[118] *See Tilei v. Cal. Dep't of Corr. & Rehab.*, No. 21-55327, 2022 WL 16946600, at *1 (9th Cir. Nov. 15, 2022) ("Tilei's allegations that the doctors were rude and dismissive are similarly irrelevant because they do not show that the treatment was inadequate." (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 26 of 43

The Court acknowledges that Mr. Beebe disputes certain facts that are material to the Court's decision. For instance, Mr. Beebe claims:

> Counsel falsely stated or made assumptions, that Beebe did not present with injury, that Beebe was not bleeding, that Beebe did not request medical attention, that Beebe wanted to be treated like all those inmates before him that were attacked, did not fight back, and were sent back to their respective housing units, **AFTER MEDICAL CHECKED THEM OUT**.[119]

But the uncontested videotape footage and medical files conclusively establish that Mr. Beebe: (1) showed no signs that he had suffered or was at substantial risk of suffering serious harm after he had been punched, (2) did not raise any medical concerns to Sgt. Andrews that are captured on the 90-minute videotape, (3) did not raise any medical concerns or present with serious injury to the medical staff attending to him multiple times a day during the days following the assault, and (4) received medical attention less than 12 hours after the assault and at regular intervals thereafter as well as eventual medical visits and a treatment plan generated in response to his RFIs. Accordingly, Defendants are entitled to summary judgment on Mr. Beebe's due process claims.

### ii. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the

---

[119] Docket 72 at 10.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 27 of 43

laws."[120]  Courts have interpreted this clause as a directive that all persons similarly situated should be treated alike.[121]  In the detention context, the Equal Protection Clause protects inmates "from arbitrary state action even within the expected conditions of confinement."[122]  To prevail on an equal protection claim, the evidence must show that the state treated the inmate differently from other similarly situated persons without a rational basis.[123]

Mr. Beebe alleges that when Sgt. Andrews did not obtain medical care for Mr. Beebe and then placed him in an administrative segregation unit after the assault, he was treated differently from other prisoners who had been assaulted.[124] He also contends that Sgt. Andrews favored Mr. Williams and discriminated against Mr. Beebe by placing both inmates in administrative segregation

---

[120] U.S. Const., amend. XIV.

[121] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citation omitted); *Noble v. Ozurenda*, No. 2:18-CV-00520-GMN-EJY, 2019 WL 4262508, at *4 (D. Nev. Sept. 9, 2019) (citations omitted).

[122] *Sandin v. Conner*, 515 U.S. 472, 487 n.11 (1995).

[123] *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005).  The Equal Protection Clause also protects individuals from intentional discrimination based on their membership in a protected class.  *See generally Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-03 (2008). However, an equal protection claim rooted in intentional discrimination is inapplicable here because Mr. Beebe does not allege he is a member of a protected class. *See Graham v. Richardson,* 403 U.S. 365, 371-72 (1971) ("[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." (citations and footnotes omitted)).  Prison inmates, by themselves, do not comprise a protected class. *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998) (federal prison camp inmates not a protected class).

[124] Docket 10 at 6 ¶¶ 24-27; Docket 72 at 11-12.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 28 of 43

notwithstanding Mr. Beebe's insistence that he did not provoke Mr. Williams prior to the assault.[125] But even assuming that Mr. Beebe's allegations are true, there is no evidence suggesting that Sgt. Andrews lacked a rational basis for placing Mr. Beebe in administrative segregation.[126] To the contrary, the evidence shows that Sgt. Andrews placed Beebe in administrative segregation while he was investigating the incident and Mr. Beebe refused to obey multiple orders to enter the change-out room.[127] And the record does not suggest that Ms. Wilson had any personal involvement in the decision to place Mr. Beebe in an administrative segregation unit.[128] As a result, Defendants are entitled to summary judgment on Mr. Beebe's equal protection claim.

## II. Alleged Violations of DOC Policies and Procedures

Mr. Beebe claims that Sgt. Andrews violated DOC Policy and Procedure 808.17 because he "failed to follow correctional protocol when injuries were physically visible, by not properly documenting those injuries, nor inquiring of the

---

[125] Docket 72 at 2-3.

[126] *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated *and that there is no rational basis for the difference in treatment*." (emphasis added) (citations omitted)).

[127] Docket 66-4 (Incident Report Form, Appeal of Disciplinary Action Form)*; see also McLaughlin v. Felker*, No. CV-08-0831-RHW, 2011 WL 5593005, at *3-4 (E.D. Cal. Nov. 16, 2011) (dismissing inmate's Section 1983 claims based on his placement in administrative segregation after he acknowledged he was placed there during pendency of investigation by prison staff of his involvement in a conspiracy to assault the staff).

[128] *See May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980) (noting that Section 1983 liability requires personal involvement or knowledge of the defendant).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 29 of 43

plaintiff of other unobvious injuries."[129]  And he claims that both Defendants violated the DOC Code of Ethical Professional Conduct by "refusing to provide professional and compassionate service."[130]  Mr. Beebe also contends that Sgt. Andrews violated the Code of Ethical Professional Conduct by failing to "contact[the] medical department to care for plaintiff, [sic] and his injuries following an unprovoked assault upon his person."[131]

As discussed above, the videotape evidence contradicts most of Mr. Beebe's core factual assertions.  Mr. Beebe exhibited minimal or no "physically visible" injuries and was not deprived of "professional and compassionate service" because he had access to medical personnel within 12 hours of the assault.  And even if Mr. Beebe's factual allegations underlying these claims were true, the DOC policies and procedures he cites do not establish a private right of action for aggrieved prisoners.[132]  Other courts addressing pro se prisoners' complaints that purport to allege violations of prison policies have rejected the existence of a private right of action justiciable in federal court outside of the Section 1983

---

[129] Docket 10 at 7 ¶ 36.

[130] Docket 10 at 8, 10 ¶¶ 41, 53.

[131] Docket 10 at 8 ¶ 41.

[132] *Cf. Nible v. Fink*, 828 F. App'x 463, 464 (9th Cir. 2020) (citing *Thurman v. Bayshore Transit Mgmt., Inc.*, 138 Cal. Rptr. 3d 130, 146-47 (Cal. Ct. App. 2012), *abrogated on other grounds by ZB, N.A. v. Superior Court*, 448 P.3d 239 (Cal. 2019)) (affirming dismissal of tort claims alleging violations of regulations governing California's Department of Corrections and Rehabilitation).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 30 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 30 of 43

context, and the Court likewise declines to do so here.[133]  To the extent Mr. Beebe offers Defendants' alleged violations of DOC policies and procedures as evidence of a constitutional violation cognizable pursuant to Section 1983, such claims must also fail because "state departmental regulations do not establish a federal *constitutional* violation" and the Court has already determined that Defendants have not violated Mr. Beebe's Fourteenth Amendment rights.[134]  And if Mr. Beebe intended to assert that any alleged violations of DOC policies and procedures establish a duty of care existing pursuant to state law, those claims are evaluated in Section III *infra*.  Accordingly, Defendants are entitled to summary judgment on Mr. Beebe's claims based on alleged violations of DOC policies and procedures.

---

[133] *See, e.g.*, *Wiseman v. Williams*, No. LA CV 20-11813-VBF(E), 2022 WL 16942841, at *7 (C.D. Cal. Sept. 15, 2022) (dismissing claim that prison official defendants violated prison regulations purportedly requiring officials to file a rules violation report); *Farias v. Cisneros*, No. 1:22-cv-00563-BAM (PC), 2022 WL 3219355, at *6 (E.D. Cal. Aug. 9, 2022) (recommending dismissal of claims alleging violations of prison rules and COVID-19-related prevention guidelines), *report and recommendation adopted*, No. 1:22-cv-00563- AWI-BAM (PC), 2022 WL 4226273 (E.D. Cal. Sept. 13, 2022); *Harris v. Horel*, No. C 07-4924 MJJ (PR), 2007 WL 3026419, at *1 (N.D. Cal. Oct. 12, 2007) (finding that a prisoner had no cognizable claim for relief under federal law when he claimed that officials violated prison policy by failing to obtain his consent prior to engraving his television).

[134] *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (first citing *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001); and then citing *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir.1986)); *see also Davis v. Scherer*, 468 U.S. 183, 193 (1984) (observing that Section 1983 provides no redress for violation of state regulations); *Manzanillo v. Jacquez*, 555 F. App'x 651, 653 (9th Cir. 2014) (ruling that a failure to record an interview with a prisoner in violation of prison policy does not constitute a violation of a federal right); *Cornejo v. County of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007) ("[A] claim for violation of state law is not cognizable under § 1983 . . . ." (citation omitted)); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 31 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 31 of 43

### III. Apparent State Law Claims

With the exception of references to negligence, Mr. Beebe does not expressly identify or characterize any of his claims as tort law claims or cite tort law cases in his briefing.[135] Still, a liberal reading of his complaint identifies several potential claims sounding in tort law. Mr. Beebe alleges that Sgt. Andrews (1) "failed his duty of care by gross and wanton negligence in ignoring his duty to seek medical attention for the plaintiff," (2) violated "his duty as 'quasi-law enforcement' to seek police involvement when a crime of assault had been perpetrated," and (3) ignored "the fact the plaintiff had been assaulted and sustained numerous visible and non-obvious injuries . . . [in] an attempt to withhold the truth of the assault and injuries."[136] Mr. Beebe claims that these wrongs "caused emotional distress and unattened [sic] to injuries to go without medical intervention."[137] The tort-like allegations against Ms. Wilson are similar. Mr. Beebe claims that she "ignor[ed] her duty to inquire into the complained of injuries caused by an assault upon the plaintiff" and "disregard[ed] . . . his request to be seen by medical."[138] He also alleges medical malpractice, citing Alaska Statute § 09.55.540.[139] Mr. Beebe

---

[135] Docket 10 at 7, 9-10 ¶¶ 35, 46, 53.

[136] Docket 10 at 7-8 ¶¶ 35, 42-43.

[137] Docket 10 at 8 ¶ 43.

[138] Docket 10 at 9 ¶ 46, 52.

[139] Docket 10 at 10 ¶ 53.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 32 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 32 of 43

contends that Ms. Wilson's alleged wrongs caused him "emotional distress and anxiety."[140]  Mr. Beebe's final apparent state law claim is that Sgt. Andrews "should be considered complicit of the assault of the plaintiff according to Alaska Criminal Laws."[141]

## A. Jurisdiction over Supplemental State Law Claims

As a threshold issue, the Court must determine whether it should exercise jurisdiction over Mr. Beebe's state law claims when it is dismissing Mr. Beebe's federal claims.  28 U.S.C. § 1367(c)(3), permits, but does not require, a court to decline to exercise supplemental jurisdiction over state law claims after dismissing all federal claims in an action.[142]  Here, the Court will continue to exercise jurisdiction over Mr. Beebe's state law claims because doing so (1) promotes judicial economy, (2) is convenient and fair to the parties given their briefing on these substantive issues, (3) is sensible given the Court's supervision of this case for over a year-and-one-half, and (4) does not run afoul of comity concerns, as this Court applies Alaska law in evaluating Mr. Beebe's state law claims.[143]

---

[140] Docket 10 at 9 ¶ 52.

[141] Docket 10 at 8 ¶ 44.

[142] *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citing 28 U.S.C. § 1367(c)).

[143] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (listing factors courts should consider in determining whether to retain jurisdiction over supplemental state law claims (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 33 of 43

## B. Analysis

### 1. Negligence and Negligent Infliction of Emotional Distress Claims

The Alaska Supreme Court has recognized that "jailers owe prisoners a duty to exercise reasonable care for the protection of their lives and health."[144] Prisoners also are "entitled to timely, adequate medical care."[145] This duty "is comparable to that owed by a common carrier to its passengers, because prisoners, like passengers, are confined and cannot avail themselves of normal opportunities for self-protection."[146] "The 'amount of risk or responsibility' involved in holding a prisoner may dictate that a jailer must exercise the 'utmost caution' to 'assist a prisoner who is *in danger*.'"[147] "Acknowledging this duty as utmost caution is really just a way of restating the requirement that the jailer must exercise reasonable care under the circumstances."[148]

---

[144] *Joseph v. State*, 26 P.3d 459, 466 (Alaska 2001) (first citing *Kanayurak v. N. Slope Borough*, 677 P.2d 893, 897 (Alaska 1984); then citing *Wilson v. City of Kotzebue*, 627 P.2d 623, 628 (Alaska 1981); and then citing *State, Dep't of Corr. v. Johnson*, 2 P.3d 56, 59–61 (Alaska 2000)).

[145] *Hahn v. State*, No. S-3850, No. 3AN-88-3682 Civil, 1991 WL 11657225, at *2 (Alaska May 8, 1991); *see also* Alaska Stat. § 33.30.011(a) ("The [DOC] commissioner shall . . . provide necessary . . . medical services for prisoners in correctional facilities or who are committed by a court to the custody of the commissioner . . . .").

[146] *Wilson*, 627 P.2d at 628.

[147] *Johnson*, 2 P.3d at 60 (citing *Wilson*, 627 P.2d at 628).

[148] *Id.* (first citing *Wilson*, 627 P.2d at 628; and then citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 34 (5th ed.1984)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 34 of 43

However, the duty of care arises with respect only to "reasonably foreseeable harm."[149]  And this duty of care is not "limitless," as the jailer "should not be the insurer of the prisoner's safety."[150]  When the circumstances accord a prisoner an opportunity to protect himself, or if the prisoner is not in "unique danger," the jailer need not exercise the "utmost caution" in order to meet the duty of care.[151]

In applying these principles to Mr. Beebe's allegations, the Court finds that Defendants had a duty under Alaska law to provide Mr. Beebe with timely, adequate medical care after he had been punched by Mr. Williams.  But even when the facts are viewed in the light most favorable to Mr. Beebe, no reasonable jury could find that either Defendant breached this duty when the undisputed facts indicate that (1) Mr. Beebe received medical attention several times daily beginning less than 12 hours after his assault; (2) Mr. Beebe has not presented any evidence that either the 12-hour delay or the delay in receiving a visit with medical personnel in response to his RFI submissions caused him any additional injury; and (3) there was no sign that Mr. Beebe was in danger during this time or that any further harm to him from the assault would have been reasonably foreseeable.[152]  Accordingly, Defendants are entitled to summary judgment on Mr.

---

[149] *Mattox v. State, Dep't of Corr.*, 323 P.3d 23, 28 (Alaska 2014) (citing *Joseph*, 26 P.3d at 459).

[150] *Id.* (citation and internal quotation marks omitted).

[151] *Johnson*, 2 P.3d at 60.

[152] *See* Docket 61-10 (summary of Mr. Beebe's access to medical care following the assault); *cf.*

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 35 of 43

Beebe's claim for negligent failure to provide necessary medical care. Similarly, to the extent Mr. Beebe brings a claim for negligent infliction of emotional distress, such a claim must fail because the Court has found there was no breach of a duty on the negligence claim.[153]

### i. Alleged Violation of Sgt. Andrews' "Quasi-Law Enforcement" Duty to Report an Observed Crime

Mr. Beebe does not cite any authority to support his assertion that Sgt. Andrews owed him a duty to report the assault to law enforcement. As state and federal courts have recognized, some states impose a duty on law enforcement officers to report and investigate criminal activity, at least in the context of a wrongful termination claim brought by a police officer who reported police misconduct.[154] However, the Court has not identified any Alaska or federal caselaw establishing a duty to a citizen under Alaska law that requires a law enforcement officer to report criminal activity. To the contrary, Courts of Appeals of two circuits, including this Circuit, have suggested that, absent a specifically imposed duty—such as one created by statute, regulation, or an agency's policies

---

*Johnson*, 2 P.3d at 60 (reversing and remanding a jury award because the jury instructions suggested a heightened duty of care but the facts showed that the plaintiff had an opportunity to exercise caution on a stairway that injured him).

[153] *See Hinsberger v. State*, 53 P.3d 568, 571-72 (Alaska 2002) (affirming superior court's grant of summary judgment on state prisoner's negligent infliction of emotional distress claims after superior court had granted summary judgment on medical negligence claim and thereby meaning there was no breach of a preexisting duty).

[154] *See, e.g.*, *Harris v. City of Virginia Beach*, 110 F.3d 59, at *4 (4th Cir. 1997) (unpublished table decision) (citing Va. Code § 15.1-138).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 36 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 36 of 43

and procedures—law enforcement officers do *not* have a general duty to report all criminal activity they witness.[155]  If this is the case for law enforcement personnel, the existence of a legal duty applicable to "quasi-law enforcement" personnel, which Mr. Beebe alleges Sgt. Andrews is, is particularly dubious.  The Court will not recognize such a duty in the absence of direction from the Alaska Legislature or Alaska appellate courts.

Nor does DOC Policy and Procedure 808.17 establish an actionable duty of care to Mr. Beebe to report criminal activity.  This policy establishes procedures for notifying several persons and entities "in the event of a prisoner's serious illness, injury, or death," which may include, "*as appropriate*," the Alaska State Troopers.[156]  Even assuming that Sgt. Andrews violated this policy by not reporting Mr. Williams' assault of Mr. Beebe to law enforcement, this does not permit Mr. Beebe to successfully maintain a claim for monetary damages against Sgt. Andrews.[157]

---

[155] *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1072 n.11 (9th Cir. 2013) (en banc) ("That a police officer cannot hide from the law and simultaneously keep his badge does not imply that an officer has a freestanding professional duty to report the unlawful activity *of others*." (citations omitted)); *United States v. Caraballo-Rodriguez*, 480 F.3d 62, 75 (1st Cir. 2007) (noting the lack of misprision cases discussing the legal theory that government officials, including police, have an affirmative duty to report crimes (citations omitted)).  In *Dahlia*, the Ninth Circuit held that a police officer did not have a professional duty, as a matter of California caselaw, to report the misconduct of other police officers.  735 F.2d at 1063.

[156] Docket 61-13 at 1.

[157] *See Nible*, 828 F. App'x at 464 (noting that, absent express language to the contrary, prison regulations do not create a private right of action (citation omitted)).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 37 of 43

### ii. Alleged Violation of Duty to Refrain from Withholding the Truth About the Assault of Mr. Beebe and His Injuries

Mr. Beebe appears to allege that Sgt. Andrews had a duty "to properly memorialize the assault . . . under departmental policies and procedure [and] to procure a 'Special Incident Report.'"[158]  Even assuming such a duty exists, it is undisputed that Sgt. Andrews documented Mr. Beebe's assault in two incident report forms.[159]

But Mr. Beebe asserts that one of the incident reports incorrectly asserts that Mr. Beebe partook in "fighting (i.e., mutual combat) with a person."[160]  The administrative segregation admission form includes a similar claim; it characterizes Mr. Beebe as "present[ing] a substantial and immediate threat to the security of the facility or public safety; mutual combat, individual demonstration, disobeying a director order, pruno [sic]."[161]  The descriptor of "mutual combat," by itself, may not fairly characterize the assault on Mr. Beebe, since there is no evidence that Mr. Beebe physically struck Mr. Williams before or after Mr. Williams punched him.[162]  However, the narratives provided on the incident report forms more completely and accurately convey the events captured on video or allegedly described to Sgt.

---

[158] Docket 66 at 4 ¶ 8.

[159] Docket 61-2 (incident report forms).

[160] Docket 61-2 at 1.

[161] Docket 61-7.

[162] Docket 61-2; Docket 61-7.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 38 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 38 of 43

Andrews following his conversation with Mr. Williams.[163]  Read in the entirety, no reasonable jury could find that Sgt. Andrews was "withhold[ing] the truth" on the forms, and that doing so caused injury to Mr. Beebe.[164]  Therefore, assuming Mr. Beebe intended to assert a claim regarding Sgt. Andrews' completion of the incident report forms, Sgt. Andrews is entitled to summary judgment on this claim.

### iii.  Malpractice Claim

Mr. Beebe contends that Ms. Wilson's "gross and wanton misconduct was negligent in violation of her duty under . . . AS 09.55.540."[165]  Alaska Statute § 09.55.540(a) requires the plaintiff in a malpractice action to prove each of the following elements by a preponderance of the evidence:

> (1) that the plaintiff had a health care provider-patient relationship with the defendant at the time of the act complained of;
> (2) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
> (3) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
> (4) that, as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.

Based on the record before the Court, Mr. Beebe has not demonstrated that triable issues of fact exist with regard to elements (2) through (4).  Even assuming

---

[163] *See, e.g.,* Docket 61-2 at 1 ("As it appeared that Beebe was instigating a fight, he was also sent to max.").

[164] Docket 10 at 8 ¶ 43.

[165] Docket 10 at 10 ¶ 53.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 39 of 43

Mr. Beebe could prove the first element—that he and Ms. Wilson had a health care provider-patient relationship—the record contains no evidence as to the degree of care that ordinarily should be exercised by a health care provider in these circumstances. Further, Mr. Beebe has supplied no evidence, such as expert testimony, that the approximate two-week delay he alleges occurred before he received a medical visit in response to his RFIs fell below the applicable standard of care.[166] To the contrary, Ms. Wilson has shown that Mr. Beebe received an adequate response to the concerns raised in his RFIs: Mr. Beebe received a physical evaluation, Tylenol and other medication, an A1C test, a discussion concerning exercise and diet, suggested behavioral changes, and a mental health evaluation.[167] Also, Mr. Beebe had access to daily medical attention during the time he spent in administrative segregation.[168] Taken together, no reasonably jury could conclude that Ms. Wilson, together with the other health care professionals, failed to respond adequately to Mr. Beebe's medical concerns.[169] Finally, as noted

---

[166] *See Hertz v. Beach*, 211 P.3d 668, 681 (Alaska 2009) ("[W]hether [nurses] were negligent in not prioritizing Hertz's dental needs over those of other inmates—a medical judgment—is a question the ordinary layperson cannot answer without expert evidence describing the standard of care required of nurses under the circumstances.").

[167] Docket 66-15 (noting Tylenol order and A1C test order); Docket 66-18 (noting results of physical evaluation of Mr. Beebe's alleged injuries and A1C test); Docket 66-19 (noting changes to medication prescriptions); Docket 66-20 (noting change to medication prescriptions, exercise plan, behavioral suggestions, and schedule for continued testing); Docket 66-21 (noting mental health evaluation and cognitive behavioral suggestions).

[168] Docket 61-10.

[169] *See Davis v. Glaves*, No. 3:20-cv-00100-SLG, 2021 WL 3025440, at *3 (D. Alaska July 16, 2021) (granting DOC nurse's motion for summary judgment upon a finding that the nurse's

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 40 of 43

Case 1:21-cv-00012-SLG    Document 85    Filed 03/01/23    Page 40 of 43

above, the record fails to show that Mr. Beebe suffered any injuries as a result of any allegedly inadequate medical attention. Accordingly, Ms. Wilson is entitled to summary judgment on this claim.

### iv. Sgt. Andrews' Alleged Complicity in the Assault of Mr. Beebe

Citing "Alaska Criminal Laws," but not a specific statute, Mr. Beebe alleges that Sgt. Andrews "should be considered complicit" in the assault of Mr. Beebe.[170] Given his use of the word "should," it is not clear if Mr. Beebe intended to assert a criminal claim against Sgt. Andrews, although the Court will liberally construe it as such. Notwithstanding this liberal construction, it is well established that a private party cannot maintain a claim under a criminal statute.[171] Sgt. Andrews is entitled to summary judgment on this claim.

## IV. Remaining Motions

Two other motions remain for the Court's consideration: Mr. Beebe's Motion to Participate in Trial Via Video Conferencing at Docket 64 and Mr. Beebe's Motion to Strike at Docket 74. Because Defendants are entitled to summary judgment on

---

response adequately addressed prisoner's complaint of chest pain).

[170] Docket 10 at 8 ¶ 44.

[171] *See Louisville, Evansville & St. Louis R.R. Co. v. Clarke*, 152 U.S. 230, 236 (1894) ("[W]e do not in this country depend upon the injured party, or his representative, to institute criminal prosecutions."); *Blanchard v. County of Los Angeles*, No. 8:19-cv-02438 JVS (DFM), 2022 WL 17081308, at *4 (C.D. Cal. Aug. 25, 2022) ("[A]n individual cannot bring a claim under a criminal statute." (citations omitted)); *Massengale v. Cal. 42 U.S.C. § 654(3) L.A. Cnty. Child Support Customer Serv. Div.*, No. 3:19-cv-00076-TMB, 2019 WL 13241625, at *3 (D. Alaska Aug. 28, 2019) ("A private citizen may not sue another person or entity under criminal laws.").

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 41 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 41 of 43

all of Mr. Beebe's claims, Mr. Beebe's Motion to Participate in Trial Via Video Conferencing at Docket 64 is denied as moot.

Mr. Beebe's Motion to Strike seeks to "strike" from Defendants' memorandum in support of their summary judgment motion statements attributed to Mr. Williams related to Mr. Beebe's alleged provocation prior to the assault.[172] Mr. Beebe also seeks to "strike" Defendants' contention that a DOC official "gave Mr. Beebe permission" to clean himself up after the assault, as Mr. Beebe contends that Sgt. Andrews directed him to clean himself up and that Mr. Beebe did not ask to do so.[173] Mr. Beebe cites Federal Rule of Civil Procedure 12(f) as authority supporting his motion.[174] In response, Defendants maintain that the motion should be denied because Rule 12(f) does not authorize a court to strike portions of dispositive motions.[175]

The Court agrees with Defendants that Rule 12(f) does not provide it with authority to "strike" the statements in their summary judgment motion with which Mr. Beebe disagrees. Accordingly, the Court denies Mr. Beebe's motion to strike but notes that, for the purposes of this order, it accepts Mr. Beebe's assertions as true that he did not provoke Mr. Williams and that Sgt. Andrews directed Mr. Beebe

---

[172] Docket 75 at 1-2.

[173] Docket 75 at 2.

[174] Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

[175] Docket 78 at 2.

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 42 of 43

Case 1:21-cv-00012-SLG   Document 85   Filed 03/01/23   Page 42 of 43

to clean himself up. As discussed in *supra* Sections I-III, however, these disputed facts are immaterial to the Court's analysis of the merits of Mr. Beebe's claims and do not present a "genuine dispute as to any material fact" for the purposes of the parties' cross-motions for summary judgment.[176]

**IT IS THEREFORE ORDERED THAT:**

1. Defendants' *Motion for Summary Judgment* at Docket 60 is GRANTED as to all claims brought by Mr. Beebe;

2. Mr. Beebe's *Motion to Participate in Trial Via Video Conferencing* at Docket 64 is DENIED as moot;

3. Mr. Beebe's *Motion for Partial Summary Judgment* at Docket 66 is DENIED;

4. Defendants' *Motion to Strike Plaintiff's Opposition to Defendants' Motion for Summary Judgment* at Docket 73 is DENIED; and

5. Mr. Beebe's *Motion to Strike* at Docket 74 is DENIED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 1st day of March, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[176] Fed. R. Civ. P. 56(a).

Case No. 1:21-cv-00012-SLG, *Beebe v. Andrews et al.*
Order Regarding Motions for Summary Judgment and Other Pending Motions
Page 43 of 43